# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No.:

**ANTHONY R. PEREZ,**

    Plaintiff,

v.

**ADAMS COUNTY SHERIFF'S DEPARTMENT, a municipality**
**CURTIS GARTH, in his individual capacity,**
**DEPUTY NEEL, in his individual capacity,**

    Defendants.

## COMPLAINT AND JURY DEMAND

*"The use of excessive violence is one of the fundamental characteristics of American policing. The excessive use of force symbolically communicates the unquestionable authority of the state in the affairs of the citizenry[1]."*

COMES NOW, Plaintiff, by and through counsel, Baumgartner Law, L.L.C., and respectfully submits this Complaint against the Defendants and alleges the following:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

---

[1] Manning, Peter and Lawrence Redlinger (1970: 99). Police Work. Cambridge, MA: The MIT Press.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 USC §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

## PARTIES

3. Plaintiff Anthony Perez is at all times relevant a citizen of the state of Colorado

4. Defendant Adams County Sheriff's Department is a Colorado municipality.

5. Defendant Sheriff's deputy Curtis Garth is at all times relevant a citizen of the state of Colorado employed by the Adams County Sheriff's Department.

6. Defendant Sheriff's deputy Neel is at all times relevant a citizen of the state of Colorado employed by the Adams County Sheriff's Department.

## GENERAL ALLEGATIONS

### A. Facts Specific to the Unconstitutional Arrest and use of Unconstitutional Excessive Force Against Plaintiff.

7. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

8. On December 3, 2019 Anthony Perez (hereinafter "Perez") was sitting in the back seat of his friend's car (hereinafter "vehicle") near the area of 78th Avenue and Quebec Street in Adams County, CO. Perez was not alone in the vehicle. Isaac Garcia was in the front passenger seat; Ryan Cordova was in the driver's seat and Perez was in the back seat with Alejandro Pacheco and Keven Garcia. At this time, Anthony Perez was 19 years old.

9. The vehicle was parked legally and not acting as a nuisance to the neighborhood.

10. Sometime around 3:00 a.m. Adams County Sheriff's Deputy Curtis Garth (hereinafter "Garth") drove his cruiser by the vehicle and saw Perez and his friends sitting in the vehicle. Garth did not see any illegal behavior by Perez or his friends. Garth did not and could not have seen a traffic infraction by the vehicle because it was not moving and was legally parked.

11. Without reasonable suspicion that any law was being violated, Garth activated his emergency lights and pulled behind the vehicle.

12. Garth exited his cruiser, approached Perez and his friends in the vehicle and began to ask them what they were doing and demanded their names.

13. Perez and is friends gave Garth their real names and birthdates.

14. While Garth was gathering identifying information from Perez and his friends he claimed to smell an odor of alcohol coming from the vehicle.

    a. At no point did Garth state he could smell any alcohol on Perez's breath or person.

    b. Garth did not see Perez with any alcohol in his possession.

15. Once Garth had Perez's and his friends' identifying information he did a CCIC/NCIC clearance on the 5 young men.

16. On Garth's sworn Affidavit for Warrantless Arrest, he claimed that no information came back for Perez or Isaac Garcia.

17. However, as later admitted at hearing, Garth lied in his affidavit about Perez's results. In fact, the name Anthony Perez returned many results during the search of the CCIC/NCIC database. Garth chose not to review the results to find Mr. Perez's entry, and instead decided to subject him to a fingerprint reader for his own convenience.

18. When Garth gets back to the vehicle he demanded Perez exit the vehicle. Garth immediately become infuriated with Perez when he asked "Why?" as in 'Why should I get out of the vehicle?' It is at about this time that a Deputy Neel arrived on scene to assist Garth.

19. At this point, Garth began to scream and yell at Perez and his friends. With a high level of anger in his voice and a menacing demeanor Garth told Perez to get out of the vehicle again and Perez asked "Why?" a second time.

20. At this time, Garth became very angry and opened the vehicle's door, grabbed Perez's arm and yanked him out of the vehicle. It was obvious to Perez and his friends that Garth was infuriated because his authority was seemingly questioned.

21. At no time did Perez resist Garth in any way or make any threatening movements or statements to Garth.

22. Once Perez was yanked out of the vehicle and was still off balance, he was subjected to an arm bar takedown – he was violently thrown to the ground by Garth. Once on the ground, Garth slammed his face into the pavement.

23. Perez was motionless on the ground, because he was stunned and in shock.

24. While Perez was stunned, Garth immediately secured both of Perez's hands behind his back. Next, Garth jammed both of his knees into Perez's neck and back despite having him under complete control. Deputy Neel also jammed a knee into Perez's lower back.

25. Perez still offered no resistance or made any threatening movements or statements to the officers.

26. While completely subdued and incapacitated Deputy Neel lifted up Perez's shirt and began delivering repeated "drive stuns" with his taser gun.

27. While lying on the ground the following statements are made by Garth to Perez right after Neel ends his last "drive stun":
    a. Garth: "See how this fuckin' goes. You think your fuckin smart and tough?"
    b. Perez: "I can't breathe."
    c. Garth: "Stop bein' a little bitch tough guy."
    d. After this statement Garth punches Perez right in the face and says: "Get the fuck off my hand…Don't fuckin grab my hand"
    e. Perez is literally face down on the pavement and in hand cuffs so he cannot grab Garth's hand. After being punched Perez says to Garth: "I'm not doin nothin."

28. Perez is then lifted up by the handcuffs which puts incredible strain on his shoulders and taken into custody and charged with resisting arrest, obstructing a police officer, and underage consumption of alcohol.

29. The charges against Perez have since been dismissed. Garth's Affidavit for Warrantless Arrest is riddled with falsehoods to cover up his illegal arrest and unreasonable use of force.
    a. For example, Garth claims that before he punched Perez in the head he asked that Perez stop grabbing his hand. This is a lie – Perez was punched for no reason and Garth never once asked him to stop grabbing his hand.

30. As a result of Garth's gratuitous use of violence Perez sustained a black eye, cuts to his face and scaring on his side from the use of a stun gun.

31. Garth's statement, "You think you're fuckin smart…" makes clear that he was beating Perez while acting out of anger and in a retaliatory fashion, and then arrested and falsified his Affidavit because Perez had questioned his reasons for detaining him.





**B. Facts Specific to the Adams County Sheriff's Office's Liability**

32. The unreasonable and excessive force used on Perez occurred as a direct result of the Adams County Sheriff's Department's informal customs and practices in regard to excessive force incidents. The Adams County Sheriff's Department continually and

intentionally fails to meaningfully investigate and discipline officers that (1) falsify reports and affidavits to justify unlawful arrests and (2) do in fact use unreasonable and excessive force against the citizens of Adams County Colorado. Thus, Adams County Sheriff's Deputies are free and unconstrained to make unlawful arrests and lie about it and use unreasonably excessive force unlawfully because they know there will not be a substantive investigation or disciplinary action taken against them when their illegal behavior is discovered.

33. By failing to meaningfully investigate, find, and discipline deputies for obvious constitutional violations regarding unlawfully arresting citizens, falsifying reports and affidavits, and using excessive and unreasonable force, the Adams County Sheriff's Department has created a culture and practice that allows for Deputies to illegally arrest citizens, falsify reports and affidavits and use illegal, excessive, and unreasonable levels of force when seizing citizens. The following is a non-exhaustive list of cases where Adams County Sheriff's Deputies have not been disciplined for writing false reports and using unnecessary force:

   a. On or around December 12, 2015 deputy Travis Wilson broke Jeffrey Woodfork's middle finger. Specifically, deputy Wilson, in a fit of rage, broke Woodfork's middle finger after being given 'the bird' and saying "fuck you" to the Deputy. Deputy Wilson falsified his report to justify the illegal use of force and despite his falsifications becoming discovered and verified he has not been disciplined.

   b. Video evidence shows that Adams County Sheriff's Deputies falsified their reports in order to cover up the use of illegal and excessive force against Mario Ybarra. The deputies were never punished for their misconduct and the county paid Mr. Ybarra $20,000 for the unlawful behavior.

   c. John Vetter was awarded $75,000 after he was wrongfully arrested and given a broken jaw by Adams County Sheriff's Deputy Andrew Roth who fabricated his police reports to cover up the illegal arrest and use of force. Deputy Roth was not disciplined and the Adams County Sheriff's Department actually publicly expressed approval for Deputy Roth and his actions which only serves to publicly condone illegal arrests, falsifying reports and affidavits, and using unreasonable and unnecessary force.

      d. Adams County Sheriff's Deputies are well known for using gratuitous violence illegally so often that they have been given the nickname "the slam crew." As a result of the widespread violence by "the slam crew" Robert Crespin was paid $18,000 and Gary Gurule was paid $45,000. None of the Deputies that are members of "the slam crew" were disciplined for their illegal behaviors.

34. Unsurprisingly the Adams County Sheriff's Department has not and will not discipline Garth for his illegal arrest, falsification of an arrest affidavit made under penalty of perjury, and unreasonable use of force against Anthony Perez.

35. It is the Adams County Sheriff's Department's responsibility to discipline deputies when they use excessive force, unlawfully arrest citizens and falsify police reports and affidavits. However, the Adams County Sheriff's Department refuses to discipline deputies which only serves to condone illegal behavior. Adams County Sheriff's Deputies will not conform to the law if they know there will never be punishment for behaving illegally.

36. The illegal arrest and unlawful use of force by Garth is a direct result of the Adams County Sheriff's Department's failure to train and supervise its employees which in turn creates a set of customs, patterns and practices (a policy-in-fact) where deputies are free to behave unconstitutionally.

37. Training involves both teaching skills and disciplining improper behavior. The Adams County Sheriff's Department is behaving with deliberate indifference to the rights of citizens because they are intentionally failing to discipline deputies for engaging in unlawful behavior. If the Adams County Sheriff's Department is unwilling to discipline its deputies for unlawful behavior then citizens will be put at risk and inevitably suffer harm from illegal and unlawful behavior by Adams County Sheriff's Deputies.

38. The Adams County Sheriff's Department's policies, customs, and practices of allowing deputies to unlawfully arrest and use excessive force against citizens without consequences or disciplinary actions is the moving force behind Anthony Perez's injuries.

39. All of the actions of the above-named Defendants have deprived Anthony Perez of his rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him damages.

## CLAIMS FOR RELIEF
## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

40. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

41. The Fourth Amendment of the U.S. Constitution prohibits unreasonable or excessive use of force in connection with searches and seizures. While detaining, restraining, and/or arresting a person, the Fourth Amendment protections only allow police officers and deputies to use the amount of force that is reasonably necessary under the circumstances

## FIRST CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Excessive Force Resulting in Injury
### (By Plaintiff against Defendants Garth and Neel)

42. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

43. A "seizure" for purposes of the Fourth Amendment to the U.S. Constitution occurs when an officer intentionally restrains the freedom of a person to simply walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

44. The law in the 10th Circuit is clearly established: police officers using force on an effectively subdued individual that is not actively resisting violates the Fourth Amendment. *McCoy v. Meyers*, 887 F.3d 1034, 1052 (2018).

    a. In *Morris v. Noe*, 672 F.3d 1185, 1190 (10th Cir.2012) the court denied qualified immunity to officers that threw a suspect to the ground while he had his hands up.

    b. In *Osterhout v. Morgan*, 763 F.App'x 757, 759 (10th Cir.2019) officers were denied qualified immunity for punching a suspect in the face without warning.

    c. In *Estate of Booker v. Gomez*, 745 F.3d 405, 426 (10th Cir.2014) qualified immunity was denied to officers that tased a suspect and put substantial pressure on his back while laying prone on his stomach and not resisting.

45. Anthony Perez was seized by Garth the moment his arm was grabbed and he was yanked out of the vehicle because he could not at that moment simply walk away.

46. At no point did Perez attempt to resist arrest or flee because he was off balance when Garth threw him to the ground with an arm bar and slammed his face into the ice-covered pavement.

47. Perez was completely subdued and not resisting when Neel tazered him and Garth put knees into his back causing a constriction of air flow to Perez's lungs and then punching him in the face.

48. The excessive force used by Defendants Garth and Neel were the proximate cause of injuries and damages suffered by Mr. Perez including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other economic losses past and future, embarrassment and public humiliation, and loss of reputation.

## SECOND CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Wrongful Arrest
### (By Plaintiff Against Defendant Garth)

49. An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot…[f]or an officer to have reasonable suspicion to seize an individual the officer must have a particularized and objective basis for suspecting the particular person stopped is involved in criminal activity. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.2000).

50. A warrantless arrest is permissible only when an officer has probable cause to believe that a person committed a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995).

51. Perez was seized the moment Garth grabbed his arm.

52. At no point during the encounter with Perez did Garth establish probable cause for an arrest.

53. In fact, Garth never even had reasonable suspicion to believe Perez had engaged in any crime.

54. Garth only wanted to use a fingerprint reader on Perez because he was too lazy to find the proper name in the CCIC/NCIC. After all, Perez did give the correct identifying information to Garth.

55. Garth never had a reason to believe Perez was lying about the identifying information, never smelled alcohol on his breath or saw him with alcohol in his hands or pockets while in the vehicle.

56. All Garth knew prior to physically assaulting Perez was that he was a young kid sitting in the back seat of a car.  Probable cause and reasonable suspicion must be specific to the individual it is alleged against to justify a seizure, search, or arrest.

57. There were not any facts allowing Garth to form reasonable suspicion or probable cause other than his own bias and hatred of a citizen that dared question his authority.

58. Thus, Perez's arrest was unlawful.

59. The wrongful arrest by Defendants Garth and Neel was the proximate cause of injuries and damages suffered by Mr. Perez including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other economic losses past and future, embarrassment and public humiliation, and loss of reputation.

### THIRD CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Malicious Prosecution
### (By Plaintiff Against Defendant Garth)

60.  Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

61. At no time during their interaction with Perez did Garth and Neel have reasonable suspicion to approach Perez and his friends.

62. The arrest of Perez was retaliatory and intentional.  Garth and Neel beat Perez because he asked the deputies 'why' he needed to exit the vehicle.

63. In order to cover up Garth's illegal beating, Perez was intentionally charged with a number of false crimes that were voluntarily dismissed by the district attorney's office.

64. The prosecution of Perez was invoked by Garth, intentionally, for a clearly improper purpose: covering up the illegal beating of a citizen.

65. The malicious prosecution by Defendants Garth and Neel was the proximate cause of injuries and damages suffered by Mr. Perez including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other

economic losses past and future, embarrassment and public humiliation, and loss of reputation.

## FOURTH CLAIM FOR RELIEF

**Unconstitutional Customs and Practices; Failure to Supervise & Train Resulting in a Violation of Constitutional Rights.**

**(By Plaintiff against Adams County Sheriff's Department)**

66. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.
67. Sheriff Richard Reigenborn has ultimate decision-making power in regard to the training, disciplining and setting of policies, customs and practices for the Adams County Sheriff's Department.
68. Adams County Sheriff's Deputies have a long history of using excessive force and making illegal arrests in an unconstitutional manner while never being punished for their infractions.
69. By failing to punish deputies for clear constitutional violations in regard to excessive force, illegal arrests and even publicly condoning the unlawful actions of their deputies the Adams County Sheriff's Department has created a de-facto policy that has given the unconstitutional use of force and implementation of illegal arrests the power of law.
70. The Adams County Sheriff's Department has failed to properly train, supervise, and/or discipline its employees generally and Garth and Neel specifically regarding the proper and/or improper use of physical restraint and constitutional limits on the use of force and protections against illegal arrests which resulted in the unlawful arrest and use of excessive force on Perez who was already fully controlled and did not pose a threat to anybody or a risk of fleeing.
71. Adams County Sheriff's Department knows there is an obvious need to train police officers on the constitutional limits of force when interacting with citizens and discipline the when they violate the constitution.
72. The Adams County Sheriff's Department knows, based on already established law in Colorado as stated above, that unlawfully seizing and then then tazering, constricting the

breathing of, and punching a non-resistant and restrained citizen in the face is prohibited by the constitution.

73. Nevertheless, the citizens of Adams County are constantly subjected to the unconstitutional use of force by Adams County Sheriff's Deputies because the deputies are not properly trained in the constitutional use of force or disciplined for unlawful behavior.

74. The failure to properly train and discipline deputies and avoid publicly condoning unlawful behavior by deputies constitutes a deliberate indifference for the rights of the citizens of Adams county to be free from excessive force and unlawful arrests because the long history of excessive force and illegal arrests shows poorly trained and undisciplined deputies will violate a citizen's Fourth Amendment rights.

75. All of these failures by the Adams County Sheriff's Department is the moving force and proximate cause to Perez's injuries and losses, including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other economic losses past and future, embarrassment and public humiliation, and loss of reputation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendants and award her all relief as allowed by law and equity including but not limited to the following:

   a. Actual economic damages as established at trial;
   b. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;
   c. Punitive damages for all claims as allowed by law in an amount to be determined at trial
   d. Declaratory relief and injunctive relief as appropriate;
   e. Appropriate equitable relief;
   f. Pre-judgment and post-judgment interest at the highest lawful rate;
   g. Attorney's fees and costs; and

h.  Such further relief as justice requires.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 8th day of October, 2020

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.
*Original signature on file at Baumgartner Law, L.L.C.*

 *s/ S. Birk Baumgartner*
S. Birk Baumgartner, #47829
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
Íbirk@baumgartnerlaw.com


 *s/ Matthew J. Greife*
Dr. Matthew J. Greife, #43487
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
matt@baumgartnerlaw.com


Plaintiff's Address:
c/o Baumgartner Law, L.L.C.
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113